## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

GULF ALUMINIUM ROLLING MILL B.S.C.
(C),

                Plaintiff,

    v.

UNITED STATES,

                Defendant.

Court No. 26-02359

## COMPLAINT

Gulf Aluminium Rolling Mill B.S.C. (C) ("GARMCO") ("Plaintiff"), by and through undersigned counsel, alleges and states as follows:

## I.    <u>JURISDICTION</u>

1.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) because the action is commenced under Section 516A of the Tariff Act of 1930, as amended (the "Act") (19 U.S.C. § 1516a). This action contests the *Final Results* issued by the U.S. Department of Commerce (the "Department") in the administrative review of the antidumping duty order on common alloy aluminum sheet ("CAAS") from the Kingdom of Bahrain (Case No. A-525-001) for the period of April 1, 2023, through March 31, 2024 (the "period of review" or "POR"). *See Common Alloy Aluminum Sheet from the Kingdom of Bahrain: Final Results of Antidumping Duty Administrative Review; 2023-2024,* 91 Fed. Reg. 7,250 (Dep't of Commerce, Feb. 17, 2026) ("Final Results"). The Department's analysis of issues raised in the *Final Results* is contained in, *inter alia*: "Issues and Decision Memorandum for the Final Results of the Antidumping Duty

1

Administrative Review: Common Alloy Aluminum Sheet from the Kingdom of Bahrain; 2023-2024," dated February 10, 2026, ("Final Results Issues and Decision Memo"); and the Memorandum entitled "Common Alloy Aluminum Sheet from the Kingdom of Bahrain: Final Analysis Memorandum," dated February 10, 2026 ("Final Analysis Memo").

## II.    STANDING OF PLAINTIFF

2.      Plaintiff is a foreign producer and exporter of the subject merchandise.  Therefore, GARMCO is an interested party as defined in 19 U.S.C. § 1677(9)(A).  Plaintiff participated in the administrative review that is the subject of this action, and, accordingly, has standing under 28 U.S.C. § 2631(c) to bring this action.

## III.    TIMELINESS OF THIS ACTION

3.      Plaintiff commenced this action by filing a summons on March 19, 2026, concurrently with this Complaint, which was within 30 days after the date of publication of the *Final Results*.  Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A).

## IV.    STATEMENT OF THE FACTS

4.      The Department issued the antidumping duty ("AD") order on CAAS from Bahrain on April 27, 2021.  *See Common Alloy Aluminum Sheet from Bahrain, Brazil, Croatia, Egypt, Germany, India, Indonesia, Italy, Oman, Romania, Serbia, Slovenia, South Africa, Spain, Taiwan and the Republic of Turkey: Antidumping Duty Orders*, 86 Fed. Reg. 22,139 (Dep't of Commerce, April 27, 2021).

5.      On June 12, 2024, the Department initiated the administrative review of the AD order on Common Alloy Aluminum Sheet from the Kingdom of Bahrain for the 2023-2024 POR.  *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 89 Fed. Reg.

2

49,844 (Dep't of Commerce Jun. 12, 2024). GARMCO was the only respondent subject to the review and therefore was selected as the sole mandatory respondent.

6.    From July 2024 to June 2025, Plaintiff provided timely responses to the Department's initial and supplemental questionnaires.[1] In its responses, Plaintiff explained and demonstrated multiple times why Saudi Arabia was the most suitable comparison country.[2] Despite this information, the Department selected the United Arab Emirates ("UAE") as the third-country comparison market.

7.    On August 8, 2025, the Department issued its *Preliminary Results*. *See Common Alloy Aluminum Sheet from the Kingdom of Bahrain: Preliminary Results of Antidumping Duty Administrative Review; 2023-2024*, 90 Fed. Reg. 37,840 (Dep't of Commerce Aug. 8, 2025) ("Preliminary Results"). In its Preliminary Results, the Department continued to use the UAE as the third-country comparison market, applied the major input rule to Plaintiff's purchases of certain inputs from its supplier thereby adjusting its cost of production, and applied the Department's default rule for selecting the date of sale (*i.e.*, earlier of invoice or shipment date).

8.    On September 3, 2025, Plaintiff submitted its administrative case brief, in which Plaintiff argued that the Department, *inter alia*: (i) should select Saudi Arabia as the third-country comparison market based on the clear record evidence establishing Saudi Arabia as the largest

---

[1] *See* Letter from Baker & McKenzie LLP to the Hon. Gina A. Raimondo, A-525-001, "GARMCO's Section A Response" (Jul. 22, 2024) ("GARMCO's AQR"); Letter from Baker & McKenzie LLP to the Hon. Gina A. Raimondo, A-525-001, "GARMCO's Sections B & C Response" (Aug. 19, 2024) ("GARMCO's BCQR"); Letter from Baker & McKenzie LLP to the Hon. Gina A. Raimondo, A-525-001, "GARMCO's Section D Response" (Sept. 3, 2024) ("GARMCO's DQR"); Letter from Baker & McKenzie LLP to the Hon. Gina A. Raimondo, A-525-001, "GARMCO's First Supplemental Questionnaire Response" (Sept. 25, 2024) ("GARMCO's SQR1"); Letter from Baker & McKenzie LLP to the Hon. Gina A. Raimondo, A-525-001, "GARMCO's Section B Response (UAE)" (Nov. 15, 2024) ("GARMCO's BQR (UAE)"); Letter from Baker & McKenzie LLP to the Hon. Jeremy Pelter, A-525-001, "GARMCO's Second Supplemental Questionnaire Response" (Feb. 11, 2025) ("GARMCO's SQR2"); Letter from Baker & McKenzie LLP to the Hon. Howard Lutnick, A-525-001, "GARMCO's Third Supplemental Questionnaire Response" (Apr. 24, 2025) ("GARMCO's SQR3"); Letter from Baker & McKenzie LLP to the Hon. Howard Lutnick, A-525-001, "GARMCO's Fourth and Fifth Supplemental Questionnaire Response" (Jun. 18, 2025) ("GARMCO's SQR4/5"); Letter from Baker & McKenzie LLP to the Hon. Howard Lutnick, A-525-001, "GARMCO's Sixth Supplemental Questionnaire Response" (Jul. 15, 2025) ("GARMCO's SQR6").
[2] *See* GARMCO's AQR at 4, Exhibit A-1; GARMCO's BCQR at B-8 – B-9; GARMCO's SQR1 at Exhibit SA-1; GARMCO's BQR (UAE) at 1-2, Exhibit A2-1; GARMCO's SQR4/5 at 2.

3

third-country market; (ii) erred in its application of the major input rule; and (iii) should rely on the contract date, on which the material terms of the transaction were set, as the date of sale.[3]

9.    On February 17, 2026, the Department published its *Final Results*, along with the related Final Results Issues and Decision Memo and Final Analysis Memo.  The Department determined that although Saudi Arabia was the largest market, the UAE had the largest number of "unique products matching GARMCO's sales to the United States during the POR" and therefore, was the better third-country market.  *See Final Results Issues and Decision Memo* at 5.  Further, the Department determined that the major input adjustment was generally warranted for Plaintiff and that material terms of the sale had been changed from the contract date, therefore, the earlier of the shipment date or invoice date applied.  *Id*. at 7-9.

## V.    STATEMENT OF THE CLAIMS

**Count 1:    The Department's Selection of the UAE as the Third-Country Comparison Market Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law.**

10.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1-9.

11.    The Department's selection of the UAE as the third-country comparison market is unsupported by substantial evidence and otherwise not in accordance with the law.  The record demonstrated that the most appropriate third-country comparison market is Saudi Arabia.  Clear evidence establishes that Saudi Arabia was the largest third-country market.  Moreover, the alloy type sold in Saudi Arabia was the same as the alloy type sold in the comparison market selected by the Department – the UAE – despite Commerce's assertion that the UAE had the largest number of "unique products" matching Plaintiff's sales to the United States during the POR.

---

[3] *See generally* Letter from Baker & McKenzie LLP to the Hon. Howard Lutnick, A-525-001, "2023-2024 Administrative Review of the Antidumping Duty Order on Common Alloy Aluminum Sheet: GARMCO's Case Brief" (Sept. 3, 2025).

12.    The Department selected the UAE because of the alloy type sold.  However, this basis is not sufficient given that sales to Saudi Arabia were greater in quantity and the same in terms of alloy type.  Thus, the Department's comparison market determination is not supported by substantial evidence and is otherwise not in accordance with law.

13.    Pursuant to 19 C.F.R. § 351.404(e), where prices in more than one third-country market satisfy the requirements of section 773(a)(1)(B)(ii) of the Act, the Department will generally select the third-country comparison market based on: (1) whether the foreign like product exported to a particular third country is more similar to the subject merchandise exported to the United States than is the foreign like product exported to other third countries; (2) whether the volume of sales to a particular third country market is larger than the volume of sales to other third countries; and (3) other factors as the Department considers appropriate.  The Department's practice "if all other factors are equal," is "to select the largest third-country market by volume."[4]

14.    GARMCO presented clear evidence that Saudi Arabia was the largest third-country market, accounting for a much large portion of GARMCO's U.S. sales volume during the POR, than the UAE.[5]  Further, Saudi Arabia had a total number of sales that greatly surpassed that of the UAE.[6]  The total number of sales in the UAE was roughly comparable to all other third-country markets reported, and far below both Saudi Arabia and the United States.[7]

15.    Nevertheless, the Department selected the UAE as the third-country comparison market based solely on the particular alloy sold in the UAE as compared to U.S. sales.  The Department specifically acknowledged that GARMCO's Saudi Arabia sales were greater than

---

[4] *Viraj Forgings, Ltd. v. United States*, 283 F. Supp. 2d 1335, 1344-45 (Ct. Int'l Trade 2003) ("Commerce is not required to choose the appropriate comparison market *solely* because goods are identical, any more than it is required to choose the appropriate comparison market *solely* because the market is the largest available.").
[5] *See* Letter from Baker & McKenzie LLP to the Hon. Gina Raimondo, A-525-001, "GARMCO's Revised Exhibit SA-1 Removing Certain BPI Designations" (Oct. 9, 2024) ("Revised Exhibit SA-1"), GARMCO's BQR (UAE) at Exhibit A2-1.
[6] *See* Revised Exhibit SA-1; GARMCO's BQR (UAE) at Exhibit A2-1.
[7] *See* Revised Exhibit SA-1; GARMCO's BQR (UAE) at Exhibit A2-1.

those in the UAE during the POR. *See Final Results Issues and Decision Memo* at 5. But the Department nevertheless inaccurately concluded that the UAE had the greatest number of unique products matching GARMCO's U.S. sales. *Id.* A review of the data on the record, however, shows that is demonstrably not true.[8]

16.    The Department claims that it first considered alloy type and then unique matching sales. But for unique alloy, the UAE's sales of the primary alloy sold in the United States accounted for a negligible percent of its total sales.[9] The rationale simply does not hold up. The Department also ignored record evidence that further supported that all third-country sales were otherwise equal, including that the same sales channel was used as is in the United States and that the same sales process is followed, whereby sales are made directly to the unrelated customers.

17.    The Department's decision to select the UAE in the face of this record evidence represents a significant departure from the delineated criteria set forth in the regulations and from its standard practice of selecting the market with the largest sales where all markets were deemed comparable, as all three potential comparison markets undeniably were here. In fact, in other recent decisions, the Department discounted a slight superiority in product specificity among a group of products that were otherwise similar in favor of the market with the largest sales volume.[10] Upon judicial review, this Court upheld the Department's determination to rely on the significantly larger volume of sales into one market for its selection.[11] Further, in the original investigation of this proceeding, the Department also selected the largest third-country market by sales volume.[12]

---

[8] *See* Revised Exhibit SA-1; GARMCO's BQR (UAE) at Exhibit A2-1.
[9] *See* Revised Exhibit SA-1; GARMCO's BQR (UAE) at Exhibit A2-1.
[10] *See Giorgia Foods, Inc. v. United States*, Court No. 23-00133, Slip Op. 24-79 (July 17, 2024).
[11] *Giorgia Foods, Inc. v. United States*, Court No. 23-00133, Slip Op. 24-79 (July 17, 2024) at *17 (though remanding due to questions surrounding the accuracy of the volume reporting).
[12] *See Common Alloy Aluminum Sheet from Bahrain: Preliminary Affirmative Determination of Sales at Less Than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures*, 85 Fed. Reg. 65,372 (Dep't of Commerce Oct. 15, 2020) and accompanying Preliminary Decision Memorandum, ACCESS Barcode 4038828-01, at 9-10.

18.    The Department's selection of the UAE as the third-country comparison market was not substantially supported by the evidence.  The record clearly demonstrates that Saudi Arabia is GARMCO's second largest market for sales behind the United States.  The use of another market on these facts simply cannot square with relevant case law, which acknowledges the Department's discretion in certain aspects, but surely requires a consistent approach – one which places significant weight on the size of the markets when making its final selection.

**Count 2:    The Department Erred in Its Application of the Major Input Rule.**

19.    Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 18.

20.    The Department's application of the major input rule was not in accordance with its statutory authority.

21.    The Department is only authorized to apply the "major input rule" and disregard a transaction between affiliated persons for a major input of the merchandise under consideration if the transaction: (1) "does not fairly reflect the amount usually reflected in sales of merchandise under consideration in the market under consideration,"[13] or (2) the Department "has reasonable grounds to believe or suspect that an amount represented as the value of such input is less than the cost of production of such input".[14]

22.    To make a determination under (1), the Department requires evidence of a market price (*e.g.*, at least one arms-length transaction) for the input at issue that would be used to produce the merchandise under consideration in the same market under consideration.[15]  To make a determination under (2), the Department must find that the cost of production of the input is greater

---

[13] 19 U.S.C. § 1677b(f)(2).

[14] 19 U.S.C. § 1677b(f)(3).

[15] *See, e.g.*, *The Torrington Company v. United States*, Slip Op. 01-56, Consol. Ct. No. 99-08-00462 (Ct. Int'l Trade May 10, 2001) at *26; *see also Mattresses from Cambodia: Final Affirmative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 86 Fed. Reg. 15,894 (Dep't Com. Mar. 25, 2021) and accompanying Issues and Decision Memorandum, ACCESS Barcode 4101212-02, at 10 (explaining that the "market under consideration" as defined within the statute under 19 U.S.C. § 1677b(f)(2) means the country under investigation/review).

than the purchase price of the input from the affiliated party.[16]  Here, there is no evidence on the record that supports (1) or (2).  As a result, the Department had no basis to apply the major input rule rendering its application of it unlawful and improper.

> **Count 3:    The Date of Sale Used by the Department Is Not Supported by Substantial Evidence and Is Not Otherwise in Accordance with Law.**

23.     Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 22.

24.     Pursuant to 19 C.F.R. § 351.401(i), the Department normally will use the date of invoice as the date of sale unless the record shows that "a different date better reflects the date on which the exporter or producer establishes the material terms of sale."

25.     The Department erred in relying on its default practice of using the earlier of shipment date or invoice date as the date of sale because the record demonstrates that the material terms of sale were set on the contract date.  In 2022, a limited number of sales could not be shipped due to COVID restrictions and impacts, which was outside the control of the parties.  Despite these *force majeure* delivery delays that were not agreed upon by the parties but nevertheless were required due to COVID restrictions, GARMCO demonstrated that the material terms of sale (*i.e.*, the meeting of the minds between the parties) were fixed at the contract date, and as a result GARMCO reported the contract date as the date of sale for its UAE sales.

26.     Both this Court and the Department have explained that material terms of sale are established when "parties had a meeting of the minds on the material terms of sale…"[17]  As explained by this Court, the Department "has a 'well-established and long-standing practice' of looking beyond the invoice date to the parties' actual course of conduct, as well as the parties'

---

[16] *See*, *e.g.*, *Certain Corrosion-Resistant Steel Products from the Republic of Korea: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 81 Fed. Reg. 35,303 (Dep't of Commerce Jun. 2, 2016) and accompanying Issues and Decision Memorandum, ACCESS Barcode 3473573- 02, at Comment 14.

[17] *Nucor Corp. v. United States*, 612 F. Supp. 2d 1264, 1307 (Ct. Int'l Trade 2009) (citing *Circular Welded Non-Alloy Steel Pipe and Tube From Mexico: Final Results of Antidumping Duty Administrative Review*, 63 Fed. Reg. 38,370 (Dep't of Commerce Jul. 16, 1998) and accompanying Issues and Decision Memorandum at Comment 1).

expectations concerning the transaction, to determine whether an earlier date — such as the contract date — represents the point at which the parties reached a meeting of the minds on the material terms of sale."[18]

27.    Importantly, changes to material contract terms "do not end Commerce's date of sale analysis.  Commerce is still required to undertake a factual analysis of the expectations and conduct of the contracting parties, to ascertain when they reached a true meeting of the minds on the material terms of sale."[19]  Thus, even if material terms did change, the Department must still consider whether the change in terms were in accordance with the parties expectations and part of their agreement.

28.    Here, the change in terms – the delayed delivery – was not a decision agreed upon by the parties; nor was it a result of either parties' actions.  The record demonstrates that a meeting of the minds was established when the parties agreed to the material terms, that is the contract date.

29.    Accordingly, Commerce's use of the earlier shipment date or invoice date as the date of sale is unsupported by substantial evidence and otherwise not in accordance with law.

## PRAYER FOR JUDGMENT AND RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff prays that this Court enter judgment as follows:

(1) Sustaining its complaint herein;

(2) Holding that the Department's determination is not supported by substantial evidence on the record and is otherwise not in accordance with law;

(3) Remanding this administrative review to the Department with instructions to:

---

[18] *Nucor*, 612 F. Supp. 2d at 1308 (citing *Notice of Final Determination of Sales at Less Than Fair Value: Sulfanilic Acid from Portugal*, 67 Fed. Reg. 60,219 (Dep't of Commerce Sept. 25, 2002) and accompanying Issues and Decision Memorandum at Comment 1).

[19] *Nucor*, 612 F. Supp. 2d at 1309.

(A) Select Saudi Arabia as the third-country comparison market;

(B) Not apply the major input rule and adjust GARMCO's cost of production accordingly; and

(C) Use the contract date as the date of sale; and

(4) Awarding such other and further relief as this Court may deem appropriate.

Dated: March 19, 2026          Respectfully submitted,

/s/ _____

Christine Streatfeild
Jasmine Elmasry

Baker & McKenzie LLP
815 Connecticut Avenue NW
Washington, DC 20006
Tel: (202) 835 6111
Email: christine.streatfeild@bakermckenzie.com

*Counsel for Plaintiff*